**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 24, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 24, 2022

ERIN L. LENNON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| LARRY BANGERTER; ALEX AND ELENA BORROMEO; CAMP FIRE SNOHOMISH COUNTY; CAROL BRITTEN; JAMES WAAK, individually and as lot owners and derivatively on behalf of HAT ISLAND COMMUNITY ASSOCIATION, a Washington non-profit corporation, | No. 99138-3 |
| Plaintiffs, | En Banc |
| MATT SUROWIECKI SR., | Filed: February 24, 2022 |
| Petitioner, |  |
| v. |  |
| HAT ISLAND COMMUNITY ASSOCIATION, a Washington non-profit corporation; CHUCK MOTSON, an individual, |  |
| Respondents, |  |
| KAREN CONNER, an individual; ALAN DASHEN, an individual; SUSAN DAHL, an individual; and JOHN DOES 1-10, individuals, |  |
| Defendants. |  |

GONZÁLEZ, C.J. — Matt Surowiecki Sr. sued the Hat Island Community

Association (HICA), arguing, among other things not before us, that HICA

violated its governing documents by not charging assessments on an equitable

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

basis.[1] We conclude that HICA's governing documents grant the association broad

discretion in setting assessments and that the association's decision on assessments

is entitled to substantial deference. Here, the association's elected board of

trustees made the decision to raise funds through a combination of use-based fees

and per-lot assessments as authorized in its governing documents. This decision

was ratified by a vote of the members. Surowiecki's evidence established, at most,

that there may be more than one equitable way to distribute the costs of

maintaining the community's obligations. He has not, however, shown as a matter

of law that either the process used, or the result reached, was not equitable.

Accordingly, we affirm in part, reverse in part, and remand to the trial court for

reinstatement of its summary judgment order in favor of HICA and for any further

proceedings necessary consistent with this opinion.

## BACKGROUND

Hat Island is a private island in the Puget Sound in Snohomish County.

HICA is a nonprofit corporation and homeowners' association that owns and

maintains the common areas and amenities on Hat Island—including platted roads,

a golf course, a marina, a ferry, and a water treatment and distribution facility.

Lots on Hat Island are subject to restrictive covenants and easements (Covenants)

---

[1] This lawsuit was filed in 2014 and involved a large number of additional claims and parties. *See Bangerter v. Hat Island Cmty. Ass'n*, 14 Wn. App. 2d 718, 727-30, 472 P.3d 998 (2020). Most of those claims are not before us.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

originally recorded in 1962. HICA operates under its articles of incorporation and bylaws as well as the Washington Nonprofit Corporation Act, ch. 24.03 RCW, and the homeowners' associations act, ch. 64.38 RCW.

HICA, which has the powers granted to nonprofit corporations and homeowner associations under Washington law, is managed by a board of trustees (Board) elected by the community members. The Board is responsible for managing and controlling the affairs of the association, including setting the amounts of charges and assessments against individual lots.

HICA's Board manages the association's revenue and expenses. Under the Covenants, the company that originally developed the island agreed to provide roads for ingress and egress, a golf course, water supply, electric service, and ferry transportation to the island. When these facilities were turned over to the Hat Island Country Club, HICA's predecessor, the Covenants granted the club

> the power to charge and assess its members on an equitable basis for the operation and maintenance of the said facilities . . . and to charge and assess [i]ts members on an equitable basis for such additional recreational or other facilities as shall be duly authorized by its membership for the mutual benefit of all [i]ts members.

4 Clerk's Papers (CP) at 1984; 10 CP at 4891.

HICA's bylaws provide for two types of assessments—annual operating assessment and special assessments. The annual operating assessment is against "each and every lot," while special assessments may be imposed on those lots

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

specially benefited. 4 CP at 1728. The bylaws do not specify how assessments should be allocated to each lot, other than to say that special assessments do not need to be uniform.

Each year HICA's Board meets to develop a budget for the upcoming year. It estimates operating expenses and the total estimated income from use-based fees, such as green fees charged for the golf course, moorage fees for the marina, fees paid for water use, fees for annual water hookup, and ferry ticket sales (Use-Based Fees). The Board has decided that Use-Based Fees are a fair way to allocate the costs of operating and maintaining these amenities to the HICA members who use them. In recent years, Use-Based Fees have covered about 50 percent of HICA's total operating expenses.

After HICA's Board determines the amount of money it anticipates generating from Use-Based Fees, it calculates the amount it will need to meet its remaining obligations. Those funds must be raised from its members through assessments. The Board then submits the proposed budget and its proposed assessments to the association members for ratification. Since at least 1967, the Board has recommended, and the members have voted to approve, levying uniform, per lot annual operating assessments for the amount not covered by Use-Based Fees.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

Surowiecki owns a number of lots on Hat Island, most of which are undeveloped. He contends that HICA's practice of equally allocating the assessments for expenses not covered by Use-Based Fees is a breach of the Covenant requiring that assessments be made on an "equitable basis."[2] 2 CP at 788. The trial court initially found that genuine issues of material fact prevented summary judgment on the question of whether the assessments were equitable. Later, the trial court granted summary judgment to HICA, holding (relevantly) that Surowiecki had not submitted admissible evidence that HICA's decision was unreasonable and that HICA's assessment-setting was shielded by the business judgment rule.

The Court of Appeals held, among many other things, that the business judgment rule limits only personal liability of individuals and "does not immunize corporations." *Bangerter v. Hat Island Cmty. Ass'n*, 14 Wn. App. 2d 718, 737, 472 P.3d 998 (2020). The court also held that judicial deference is not owed to a homeowners' association's interpretation of its governing documents and applied a reasonableness standard of review of the Board's discretionary decisions. *Id.* at

---

[2] Surowiecki also contends that two special assessments related to a marina improvement project that he opposes are not equitable because HICA, among other things, misrepresented the costs of the project to its members. Suppl. Br. of Pet'r at 9. In a separate ruling not before us, the trial court concluded that allegations of misrepresentation were not supported by evidence in the record. Further, in a 2012 settlement agreement, Surowiecki waived any claim that the vote adopting the project was invalid or unenforceable.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

737, 738-41. We granted review limited to the assessment and the related business

judgment rule issue. Am. Order, No. 99138-3 (Wash. Feb. 3, 2021).

ANALYSIS

We review a trial court's order on a motion for summary judgment de novo.

*Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014)

(citing *Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 416, 150 P.2d 545

(2007)). A court may grant summary judgment if the evidence, viewed in the light

most favorable to the nonmoving party, establishes that there is no genuine issue of

any material fact and that the moving party is entitled to judgment as a matter of

law. CR 56(c); *Wilkinson*, 180 Wn.2d at 249 (quoting *Dowler v. Clover Park Sch.*

*Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011)). "We may affirm the

trial court on any grounds established by the pleadings and supported by the

record." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 766, 58 P.3d

276 (2002) (citing *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337,

344, 883 P.2d 1383 (1994)).

I.   The Covenants grant HICA broad discretion in allocating assessments "on an equitable basis"

This case turns on the meaning of the Covenant that authorizes HICA to

charge and assess its members "on an equitable basis." Interpretation of covenants

is a question of law based on the rules of contract interpretation. *Wilkinson*, 180

Wn.2d at 249. The court's primary objective is to determine the intent of the

6

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

original parties that established the covenants. *Riss v. Angel*, 131 Wn.2d 612, 621, 934 P.2d 669 (1997) (citing *Metzner v. Wojdyla*, 125 Wn.2d 445, 450, 886 P.2d 154 (1994)); ROBERT G. NATELSON, LAW OF PROPERTY OWNERS ASSOCIATIONS § 2.5, at 61 (1989). "In determining intent, language is given its ordinary and common meaning." *Riss*, 131 Wn.2d at 621 (citing *Metzner*, 125 Wn.2d at 450).

The Covenant at issue grants HICA

> the power to charge and assess its members on an equitable basis for the operation and maintenance of the said [original] facilities . . . and to charge and assess [i]ts members on an equitable basis for such additional recreational or other facilities as shall be duly authorized by its membership for the mutual benefit of all [i]ts members.

4 CP at 1984; 10 CP at 4891.

This Covenant grants HICA the power to recoup the costs of operating and maintaining the original facilities and any additional facilities from the members. HICA can do this through charges (Use-Based Fees) and assessments. Implicit in "the power to charge and assess" is a broad grant of discretion in deciding the method of allocating costs to its members. The phrase "on an equitable basis" serves only to limit the range of options available to HICA; it does not imply that there is one equitable basis that is better than another.

"Equitable" has been defined as "'characterized by equity: fair to all concerned.'" *Ackerman v. Sudden Valley Cmty. Ass'n*, 89 Wn. App. 156, 164, 944 P.2d 1045 (1997) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

769 (1969)).  Such broad concepts do not lend themselves to a precise formulation.

Rather, they set a limit on what would otherwise be unfettered discretion.

When a Covenant grants a homeowners' association broad discretion in a

particular area, that discretion must be exercised reasonably and in good faith.

*Riss*, 131 Wn.2d at 629.  Discretion is not reasonably exercised when the

procedures laid out in the governing documents and relevant statutes are not

followed or when the information used in the decision-making process is not

reasonably accurate.  *See id.* at 627-28.  *Riss* suggests that when a homeowners'

association makes a discretionary decision in a procedurally valid way, courts will

not substitute their judgment for that of the association absent a showing of

"'fraud, dishonesty, or incompetence (i.e., *failure to exercise proper care, skill,*

*and diligence*)[.]'  Reasonable care is required."  *Id.* at 632 (alteration in original)

(citation omitted) (quoting *In re Spokane Concrete Prods., Inc.*, 126 Wn.2d 269,

279, 892 P.2d 98 (1995)).  We adopt that rule here in recognition of the respect due

to the self-governance of homeowner associations, the importance of finality in

budgeting, and the avoidance of interfering with associations' ability to meet their

financial obligations.[3]  To hold otherwise would subject associations to lawsuits

---

[3] The importance of ensuring the finality of budget and assessment decisions is reflected in the homeowner associations act, which governed at the time of the assessment decisions at issue in this case.  The act required that within 30 days after adoption of a budget by the board of directors, the board

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

anytime a homeowner disagreed with a discretionary choice made by the board and ratified by the members.

Here, the association's bylaws lay out the procedure for establishing charges and assessments. The Board establishes an operating budget each year. It then estimates the expected income from Use-Based Fees, such as greens fees at the golf course and moorage fees at the marina, and the expected income from current assessments. If the total anticipated income is less than the total anticipated expenses, the Board looks at its options to raise additional income, which may include increasing Use-Based Fees or assessments. As part of the process, the method of allocating total assessments to individual lots may also be considered. Since its creation, HICA has always allocated assessments to individual lots equally, though it is not required to do so. Any increase in the prior year's assessments is subject to approval by a vote of the association members. The record does not contain evidence that HICA failed to follow this process or that its decisions were based on the sort of inaccurate information that tainted the

---

set a date for a meeting of the owners to consider ratification of the budget . . . .
Unless at that meeting the owners of a majority of the votes in the association are
allocated or any larger percentage specified in the governing documents reject the
budget . . . the budget is ratified, whether or not a quorum is present.

RCW 64.38.025(3). HICA's bylaws establish a more stringent procedure of owner approval by providing that the proposed annual assessment amount, if increased from the prior year, must be "presented to the community for approval during the annual meeting of the Association." 2 CP at 601. The approval requirement serves as an additional check on the Board's power but does not defeat the importance of finality of financial decisions.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

decision-making in *Riss*. The evidence that the Board received different cost estimates for projects is not the same as the sort of misleading information that was presented to the voting homeowners in *Riss*. *See id*. at 628 (describing the misleading photo montage and misleading statements about the height and size of a proposed structure presented to the association).

Surowiecki complains that allocating assessments equally to each lot is not equitable because not all lots are the same. Some are developed with houses occupied by full-time residents. Others are undeveloped, and there are some that Surowiecki contends are simply "undevelopable." Surowiecki asserts that assessments should be allocated on the basis of each lot's assessed value. The fact that Surowiecki has identified an alternative allocation method that might also be equitable is simply not enough to create a question about whether the current system is not equitable. The Board has held several community meetings seeking owner input on the issue of assessment allocation and has considered the claim that assessments should be allocated based on assessed values. Ultimately the Board has consistently decided that after Use-Based Fees have been charged, the remaining balance should be raised by assessments allocated equally to each lot and those decisions have been ratified by a vote of the members. Absent a

10

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

showing of fraud, dishonesty, or incompetence, that decision will not be disturbed.[4]

>       II.       The Business Judgment Rule

The trial court held that "the activities of the HICA Board are governed by the Business Judgment Rule." 1 CP at 202. And the Court of Appeals "conclude[d] the business judgment rule does not immunize corporations." *Bangerter*, 14 Wn. App. 2d at 737. Whether, and if so to what extent, the business judgment rule applies to homeowners' associations is a thorny question. *See Riss*, 131 Wn.2d at 631. Given that we can affirm on any grounds, we decline to resolve that question here and wait for a case that more squarely presents it. *See Truck Ins. Exch.*, 147 Wn.2d at 766 (citing *Mountain Park*, 125 Wn.2d at 344).

"The scope of the 'business judgment' rule in Washington is somewhat unclear." *Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 833, 786 P.2d 285 (1990). In general, the rule "'immunizes management from liability in a corporate transaction . . . where a reasonable basis exists to indicate that the transaction was made in good faith.'" *Id.* (alteration in original) (quoting *Interlake Porsche + Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 509, 728 P.2d 597 (1986)). Most relevantly, "the role

---

[4] We respectfully disagree with our dissenting colleagues that the trial court's 2016 denial of summary judgment prevents us from considering now whether, under the correct legal standard, the plaintiffs have established a triable issue of fact that the Board has violated the covenants by failing to impose assessments on an equitable basis.

11

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

of the business judgment rule where homeowners' associations [are] concerned is the subject of ongoing debate." *Riss*, 131 Wn.2d at 631. It is also an open question whether the rule's limitation on liability for individual officers and directors should be extended to the corporate entities themselves.

These are important questions that must await a case that squarely presents those issues. The reasonableness standard we apply today is similar in some respects to the prerequisites for application of the business judgment rule but is grounded in the terms of the Covenants, which grant broad discretion to HICA in establishing assessments.

CONCLUSION

While courts do not owe deference to a homeowners' association's interpretation of its governing documents, courts do owe appropriate deference to their reasonable discretionary decisions. Here, HICA's governing documents grant it broad discretion in setting assessments. Surowiecki has not shown that the assessments were not equitably assessed. Accordingly, there is no cause to consider whether the business judgment rule applies. We affirm in part, reverse in part, and remand to the trial court for reinstatement of the trial court's summary judgment order in favor of HICA and any other proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3

_____
González, C.J.

WE CONCUR:

_____          _____
                                          Gordon McCloud, J.

_____          _____
                                          Yu, J.

_____          _____
Owens, J.                                 Montoya-Lewis, J.

_____          _____

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

No. 99138-3

STEPHENS, J. (dissenting)—Matt Surowiecki Sr. filed suit in 2014 against the Hat Island Community Association (HICA), claiming HICA breached its restrictive covenants by imposing inequitable assessments on lots owned by its members. HICA moved for partial summary judgment to dismiss that claim in late 2015, asking the trial court to find its assessments are equitable as a matter of law. The trial court denied the motion in early 2016, identifying a genuine issue of material fact as to whether HICA's assessments are equitable. No party has appealed, assigned error to, or otherwise challenged that ruling; it is simply not before us.

HICA again moved for partial summary judgment in 2018, this time arguing that its assessment decisions are entitled to deference under this court's decision in *Riss*[1] and that Surowiecki had not produced the evidence necessary to overcome that deference. The trial court—failing to recognize that applying the *Riss* standard is

---

[1] *Riss v. Angel*, 131 Wn.2d 612, 934 P.2d 669 (1997).

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

incompatible with its earlier ruling—accepted HICA's argument. The majority makes the same mistake by applying *Riss*'s deferential standard to a decision that cannot be said as a matter of law to fall within HICA's discretionary authority.

The majority insists its conclusion is necessary to avoid meritless litigation, fretting that a contrary decision "would subject associations to lawsuits anytime a homeowner disagreed with a discretionary choice made by the board and ratified by the members." Majority at 9. But the effect of the majority's decision is to unjustifiably insulate homeowners' associations from lawsuits *even when a homeowner presents evidence that the association is acting beyond the scope of its discretionary authority*. Because I believe Washington courts must remain open to homeowners who have legitimate claims against their homeowners' associations, I respectfully dissent.

## ANALYSIS

This appeal arises from the trial court's 2018 order granting partial summary judgment for HICA, but it is controlled by the trial court's 2016 ruling that "there is a genuine issue of material fact as to whether [HICA's] assessments are being made in an equitable fashion." 9 Clerk's Papers (CP) at 4423. The majority briefly acknowledges the existence of that earlier ruling. Majority at 5 ("The trial court initially found that genuine issues of material fact prevented summary judgment on

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

the question of whether the assessments were equitable."). Yet the majority never engages with the implications of that ruling for today's decision.[2]

Generally, appellate courts are not empowered to set aside the unchallenged rulings of trial courts. *See Clark County v. W. Wash. Growth Mgmt. Hr'gs Board*, 177 Wn.2d 136, 144-45, 298 P.3d 704 (2013) ("The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties. . . . The [appellate] court must address only those claims and issues necessary to properly resolving the case as raised on appeal by the parties." (gathering RAPs and cases)). Here, neither party appealed the 2016 ruling, assigned error to the 2016 ruling, or argued that the 2016 ruling should be reversed. Moreover, the 2018 ruling—the only ruling that is properly before us—makes clear that it does not reconsider or reverse the 2016 ruling[1]. 1 CP at 202 (distinguishing the arguments at issue in the 2016 and 2018 rulings).

The trial court's unchallenged 2016 ruling remains in force. Yet the majority's analysis proceeds as though that ruling does not exist. Consequently, the majority reaches a result that is incompatible with an unchallenged ruling in this

---

[2] Indeed, five pages after acknowledging the dispositive 2016 ruling, the majority insists Surowiecki *has not* established a genuine issue of material fact on the very question the trial court found. Majority at 10 ("The fact that Surowiecki has identified an alternative allocation method that might also be equitable is simply not enough to create a question about whether the current system is not equitable.").

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

case. Given proper consideration, the trial court's unchallenged 2016 ruling refutes the majority's analysis.

      I.       The *Riss* Standard Cannot Apply Here

The majority's analysis is based on our decision in *Riss*, 131 Wn.2d 612. The majority adopts the deferential standard we articulated there in order to insulate HICA from Surowiecki's challenge—indeed, to largely insulate any homeowners' associations from accountability to its members. But the majority fails to appreciate that *Riss* cannot apply here because the majority skips over the question at the heart of this case: whether HICA's decision to impose uniform assessments was within HICA's power under its restrictive covenants. Critically, the trial court's 2016 summary judgment order, ruling a genuine issue of material fact exists as to whether HICA's uniform assessments are equitable, is dispositive of that question. Because the reasonableness of HICA's assessments is a question for the trier of fact, and because HICA's power to assess extends only to equitable assessments, it cannot be said as a matter of law that HICA acted within its discretion under its governing documents. *Riss*'s deferential standard therefore cannot justify granting summary judgment for HICA here.

It is important to appreciate the limited reach of our decision in *Riss*. There, a husband and wife who had recently purchased a lot within a homeowners'

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

association challenged the association's decision to reject their proposed plans to construct a new home. We determined the restrictive covenants on the lots within the homeowners' association gave the association "discretion to consider size, height, and proximity to neighbors in deciding whether to approve [a] proposed residence." *Id*. at 627. And we "agree[d] with the majority of courts that covenants providing for consent before construction or remodeling will be upheld so long as the authority to consent is exercised reasonably and in good faith." *Id.* at 625. Because we concluded the homeowners' association's decision was unreasonable and arbitrary, we held the homeowners could build their proposed home with minor alterations.

> A. *Riss* Identifies a Single, Narrow Circumstance in Which Washington Courts Defer to Homeowners' Associations' Decisions under Their Restrictive Covenants

The majority claims *Riss* supports the broad proposition "that when a homeowners' association makes a discretionary decision in a procedurally valid way, courts will not substitute their judgment for that of the association absent a showing of 'fraud, dishonesty, or incompetence (i.e., *failure to exercise proper care, skill, and diligence*)[.] Reasonable care is required.'" Majority at 8 (alteration in original) (internal quotation marks omitted) (quoting *Riss*, 131 Wn.2d at 632). But *Riss* does not purport to set this standard for judicial review of every discretionary

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

decision a homeowners' association might make. Instead, *Riss* identifies a single, narrow type of discretionary decision entitled to limited deference: a decision made under "a general consent to construction covenant." *Riss*, 131 Wn.2d at 625.

This type of decision is unique. While "objective specific covenants . . . involve primarily a nondiscretionary, ministerial procedure" that is easily subjected to judicial scrutiny, general consent to construction covenants involve more ambiguous notions. *Id.* *Riss* explains that decisions under general consent to construction covenants are "based upon standards such as aesthetics and harmony with the neighborhood," which "permit reasonable differences about whether a house is aesthetically appropriate." *Id.* at 629. Neighborhood harmony and community aesthetics are not easily reducible to neutral legal standards that courts can apply in case after case. States throughout the country have therefore decided to defer to the aesthetic judgments of homeowners' associations—but even that deference is limited to circumstances where "the authority to consent is exercised reasonably and in good faith." *Id.* at 624 (citing *Hannula v. Hacienda Homes, Inc.*, 34 Cal. 2d 442, 211 P.2d 302 (1949); *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 449 P.2d 361 (1969); *Alliegro v. Home Owners of Edgewood Hills, Inc.*, 35 Del. Ch. 543, 122 A.2d 910 (1956); *Winslette v. Keeler*, 220 Ga. 100, 137 S.E.2d 288 (1964); *McNamee v. Bishop Tr. Co.*, 62 Haw. 397, 616 P.2d 205 (1980); *Oakbrook*

6

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

*Civic Ass'n v. Sonnier*, 481 So. 2d 1008 (La. 1986); *Donoghue v. Prynnwood Corp.*, 356 Mass. 703, 255 N.E.2d 326 (1970); *Kirkley v. Seipelt*, 212 Md. 127, 128 A.2d 430 (1957); *LeBlanc v. Webster*, 483 S.W.2d 647 (Mo. Ct. App. 1972); *Raintree Homeowners Ass'n v. Bleimann*, 342 N.C. 159, 463 S.E.2d 72 (1995); *Syrian Antiochian Orthodox Archdiocese v. Palisades Assocs.*, 110 N.J. Super. 34, 264 A.2d 257 (1970); *Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 336 S.E.2d 15 (1985)).

That narrow grant of limited deference was a central issue in *Riss* precisely because this court had never before granted any deference to the discretionary decisions of homeowners' associations. *Riss* announced a limited exception to the general rule that courts should interpret and enforce the terms of restrictive covenants. The majority's contrary characterization is disconnected from the context in which the *Riss* decision was made, and it dramatically expands that decision.

The majority does little to justify its expansion of *Riss*'s narrow grant of deference to homeowners' associations. Troublingly, its reasoning is delivered in a single line: "We adopt that rule here in recognition of the respect due to the self-governance of homeowner associations, the importance of finality in budgeting, and the avoidance of interfering with associations' ability to meet their financial

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

obligations." Majority at 8-9. Such a broad, conclusory announcement stands in sharp contrast to *Riss*'s detailed discussion of why deference is appropriate in a much more limited circumstance.

I do not mean to suggest the majority is wrong to recognize the concerns it identifies. Certainly, they are worthy of this court's consideration. But those concerns are of a fundamentally different nature from what the court addressed in *Riss*, and they do not justify an extension of *Riss*'s rule here. It is one thing to recognize that aesthetic decisions to preserve neighborhood character are best made by a collective organization of neighbors, unless they are unreasonable or acting in bad faith. It is something else entirely to suggest that courts cannot enforce the specific, substantive guarantees of restrictive covenants that limit a landowner's enjoyment of property on the ground that homeowners' associations need special protection. No other individuals or entities are afforded such deference in the enforcement of their restrictive covenants, and nothing in the majority's analysis offers a persuasive reason why homeowners' associations should be so specially treated.[3]

---

[3] I am similarly unpersuaded by the majority's conclusory assertion that "[t]he record does not contain evidence that HICA failed to follow th[e] process" laid out by its governing documents. Majority at 10. The Court of Appeals "reverse[d] summary judgment of Surowiecki's assessment claim" as to whether the process used complied with HICA's governing documents, explaining, "From this record, it is impossible to determine if HICA's board and its members ever made a formal decision to retain the

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

B. *Riss* Cannot Apply Here Because the Trial Court's Unchallenged 2016
   Ruling Requires a Factual Determination of Whether HICA's Assessment
   Decisions Are Equitable and Therefore within Its Discretion

Even if we were to accept the premise that *Riss* applies beyond the limited

scope of architectural review covenants, the majority fails to apply its standard

faithfully. The majority recognizes that HICA's restrictive covenants contain "a

broad grant of discretion in deciding the method of allocating costs to its members"

and "[t]he phrase 'on an equitable basis' serves only to limit the range of options

available to HICA." Majority at 7; *accord Ackerman v. Sudden Valley Cmty. Ass'n*,

89 Wn. App. 156, 164, 944 P.2d 1045 (1997). But the majority ignores that the trial

court found a genuine issue of material fact as to whether HICA's assessments were

equitable—and no party has challenged that ruling on appeal. Because HICA's

discretion to impose assessments is limited by the requirement that those

assessments be imposed on an equitable basis, the trial court's ruling means there is

a genuine issue of material fact as to whether HICA's decision to impose these

assessments was within the scope of its discretion in the first place.

The *Riss* standard grants deference only to decisions made by homeowners'

associations that fall within the scope of their discretionary authority. Because it has

_____

existing assessment structure or to reject Surowiecki's proposed alternative." *Bangerter
v. Hat Island Cmty. Ass'n*, 14 Wn. App. 2d 718, 741, 740, 472 P.3d 998 (2020). The
majority reverses that holding but does not explain why the Court of Appeals's analysis
was wrong and its analysis is right.

9

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

not yet been determined whether HICA's decision to impose these assessments was within the scope of its authority, we cannot at this juncture proclaim that decision is entitled to deference under *Riss*. Accordingly, I would hold that the trial court's finding of a genuine issue of material fact on whether HICA's assessments are equitable precludes application of the *Riss* standard at summary judgment.

II. The Business Judgment Rule Cannot Apply Here

For similar reasons, I would hold the business judgment rule cannot apply at summary judgment when there is a genuine issue of material fact as to whether a corporation acted in excess of its authority. I agree with the majority's decision to leave the larger question of whether the business judgment rule can ever apply to homeowners' associations for another day.[4] But I would follow *Riss*'s lead and explain that it does not matter whether the business judgment rule applies to homeowners' associations because that rule cannot insulate HICA's assessment decision from judicial review here.

---

[4] It appears the result reached by the majority is actually in tension with its decision to leave the business judgment rule question for another day. Majority at 12-13 ("We . . . remand to the trial court for reinstatement of the trial court's summary judgment order in favor of HICA.") As the majority notes, that summary judgment order determined that the business judgment rule applies to HICA, a homeowners' association. Majority at 11 (citing 1 CP at 202). I respectfully suggest that this court should not decline to decide whether the business judgment rule applies while simultaneously directing the trial court to reinstate an order applying that very rule on remand.

10

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

In *Riss*, we declined to adopt the business judgment rule for homeowners' associations but noted, "it is clear that the rule if applied here would not exonerate the homeowners [association] from their unreasonable decision to reject [the couple's] proposal." 131 Wn.2d at 633. Similarly, if applied in this case, the business judgment rule cannot exonerate HICA at summary judgment when there is a genuine issue of material fact as to whether HICA's assessments are within the scope of its authority under the restrictive covenants.

"Under the 'business judgment rule,' corporate management is immunized from liability in a corporate transaction where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith." *Scott v. Trans-System, Inc.*, 148 Wn.2d 701, 709, 64 P.3d 1 (2003) (citing *Nursing Home Bldg. Corp. v. DeHart,* 13 Wn. App. 489, 498, 535 P.2d 137 (1975)).

The business judgment rule does not insulate corporate decisions from claims that those decisions violate contractual obligations, such as restrictive covenants. *See Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 833-35, 786 P.2d 285 (1990) (holding the business judgment rule does not apply when corporate officer breached "specific contractual duties"); *see also Willmschen v. Trinity Lakes Improvement Ass'n*, 362 Ill. App. 3d 546, 550-51, 840 N.E.2d 1275, 1279-80, 291 Ill. Dec. 840 (2005)

11

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

("While courts ordinarily will not interfere with management decisions on the basis of their wisdom or lack thereof, the business judgment rule does not afford a corporation carte blanche to behave unlawfully. Hence, we agree with the observation of a court from a sister state that 'it may be good business judgment to walk away from a contract, [but] this is no defense to a breach of contract claim.'" (alteration in original) (italics omitted) (quoting *Dinicu v. Groff Studios Corp*., 257 A.D.2d 218, 222-23, 690 N.Y.S.2d 220, 223 (1999))). Similarly, it may be good business for HICA to impose uniform assessments on all lots, but that is no defense to Surowiecki's claim that doing so exceeds HICA's authority under its restrictive covenants.

Nor does the business judgment rule insulate corporations from liability for illegal acts. *Durand v. HIMC Corp*., 151 Wn. App. 818, 836, 214 P.3d 189 (2009) (holding the business judgment rule does not apply to corporate officers' decisions that violate state law). Under the homeowners' associations act—which applied to HICA when Surowiecki filed this suit and so governs our analysis here—the scope of a homeowners' association's authority to "impose and collect assessments for common expenses from owners" and to "collect any payments, fees, or charges" is strictly limited by its restrictive covenants and other governing documents. RCW 64.38.020 (2), (10), .010(11). Thus, if HICA's assessment decision exceeds

12

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

its authority under its restrictive covenants, that decision necessarily exceeds its authority under Washington law.

Surowiecki has established a genuine issue of material fact as to whether HICA's assessments are equitable, and thus it is an open question whether HICA's assessment decision exceeds its authority under its restrictive covenants. It follows that Surowiecki has established a genuine issue of material fact as to whether HICA's assessment decision exceeds its authority under Washington law. I would hold that when a party establishes a genuine issue of material fact as to whether a corporate decision violates the law, that showing necessarily precludes dismissal based on the business judgment rule at summary judgment.

III.     The Majority Misapplies the Summary Judgment Standard

One final point merits brief discussion. In taking the question of whether HICA's assessments are equitable out of the trier of fact's hands, the majority misapplies the summary judgment standard and holds Surowiecki to an unreasonably high burden. The majority concludes Surowiecki cannot defeat summary judgment because "[h]e has not . . . shown as a matter of law that either the process used [by HICA to set assessments], or the result reached, was not equitable." Majority at 2. Of course, Surowiecki need not show he is entitled to judgment as a matter of law in order to survive summary judgment as the nonmoving

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

party. That is the burden of the *moving* party in order to prevail on summary judgment, CR 56(c), as the majority seems to acknowledge. Majority at 6 ("We review a trial court's order on a motion for summary judgment de novo. A court may grant summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, establishes that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." (citations omitted) (citing *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014); CR 56(c))). As the party *resisting* summary judgment, Surowiecki was required only to show the existence of a genuine issue of material fact—a burden he has indisputably met. *See* 9 CP at 4423 ("The court finds that there is a genuine issue of material fact as to whether [HICA's] assessments are being made in an equitable fashion.").

## CONCLUSION

We cannot ignore the trial court's unchallenged ruling that a genuine issue of material fact exists as to whether HICA's assessments are equitable. That 2016 ruling necessarily precludes summary judgment in favor of HICA under *Riss* and the business judgment rule because a finding in Surowiecki's favor on the equitable assessment issue necessarily defeats HICA's arguments for deference. Because I cannot support the majority's result or its reasoning, I respectfully dissent. I would

*Surowiecki v. Hat Island Cmty. Ass'n*, No. 99138-3
(Stephens, J., dissenting)

reverse the Court of Appeals, vacate the trial court's order, and remand for further

proceedings.

Stephens, J.

Johnson, J.

Madsen, J.

Whitener, J.

15