## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| MIKI M. MULLOR and MICHAL MULLOR, a marital community,<br><br>Appellants,<br><br>v.<br><br>RENAISSANCE RIDGE HOMEOWNERS' ASSOCIATION, a Washington Non-Profit Corporation; and SURESH ANNAMREDDY and DIVYA KIRON ANNAMREDDY, a marital community,<br><br>Respondents. | No. 83025-2-I<br><br>ORDER GRANTING MOTION TO PUBLISH |

The respondents, Renaissance Ridge Homeowners Association, having filed a motion to publish opinion, and the hearing panel having reconsidered its prior determination and finding that the opinion will be of precedential value; now, therefore it is hereby:

ORDERED that the unpublished opinion filed August 1, 2022, shall be published and printed in the Washington Appellate Reports.

For the Court:

Andrus, C.J.

FILED
8/1/2022
Court of Appeals
Division I
State of Washington

THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MIKI M. MULLOR and MICHAL MULLOR, a marital community, | ) ) ) | No. 83025-2-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| RENAISSANCE RIDGE HOMEOWNERS' ASSOCIATION, a Washington Non-Profit Corporation; and SURESH ANNAMREDDY and DIVYA KIRON ANNAMREDDY, a marital community, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | |

ANDRUS, C.J. — Miki and Michal Mullor appeal the summary judgment dismissal of claims against neighbors Suresh and Divya Annamreddy, and the Renaissance Ridge Homeowners Association (the Association), for alleged violations of Association covenants relating to the style of cedar fence the Annamreddys erected on the boundary of the two parcels. Because the Association exercised its lawful authority under the covenants to grant a variance to the Annamreddys for the cedar fence, we affirm. But because the trial court failed to enter findings of fact and conclusions of law to support its fee award to the Annamreddys, we remand to the trial court to do so.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83025-2-I/2

FACTS

Miki and Michal Mullor own a home in a residential neighborhood known as the Renaissance Ridge in Sammamish, Washington. Suresh and Divya Annamreddy own a home adjacent to the Mullors' property, also in Renaissance Ridge. The Mullors' property is northwest of the Annamreddys' property, and a portion of the Mullors' property sits 10 feet below the Annamreddy backyard, with the two properties separated by a retaining wall and fencing.

Homeowners living in Renaissance Ridge are members of the Association and subject to a set of Covenants, Conditions, and Restrictions (CC&Rs). The CC&Rs set out land use restrictions for all lots within the development, including the style of fencing permitted in various locations on a lot or within the residential neighborhood. Article XV of the CC&Rs established an Architectural Control Committee (the Committee), appointed by the board of directors, to review plans and specifications for fences that residents propose to place on their properties. Currently, the Association's three board members act as the Committee.

Article XII, section 4 of the CC&Rs identifies the type of fences that homeowners may use in Renaissance Ridge:

> Fences, walls or shrubs are permitted on side and rear property lines, . . . subject to (1) the approval of the Committee and (2) determination whether such fences, walls or shrubs would interfere with utility easements reflected on the face of the Plat and other easements elsewhere recorded. . . . No barbed wire, chain link, or corrugated fiberglass fences shall be erected on any Lot, except that vinyl coated chain link fencing for sports [facility] or galvanized or vinyl coated chain link dog kennel enclosures (providing dog kennel is fully screened from view of adjacent lots or public right-of-way) or county owned facilities may be considered for approval by the Committee upon request. All fences, open and solid, are to meet the standards set by the Committee and must be approved by the

2

No. 83025-2-I/3

> Committee prior to construction. . . . All [fencing] must be of the style shown on the attached Exhibit "C," and location approved by the Architectural Control Committee.

(Emphasis added.) Exhibit "C," referenced in article XII, section 4, is a "Wildlife Network Management Plan" (Plan), approved by King County to provide "guidelines and ongoing restrictions to preserve and protect the wildlife habitats located within" the Renaissance Ridge plat. The plan notes that the residential development contains a 150' wide wildlife network at the two entries into the plat and near a stormwater detention facility needed for the development. The county approved encroachments into this wildlife network conditioned on approval of the plan. The relevant provision of the plan provided:

> Preservation of wildlife habitat will be accomplished by limiting the disturbed area for development. . ..
>
> Protection of the non-disturbed areas will be accomplished in several ways. Fencing along wetlands and wildlife networks will be provided as shown in Figure One. Back yards of all lots adjacent to the wildlife network will be fenced with a solid type 5' – 6' fence per Exhibit "A." The wildlife network adjacent to SE 8th St. will be fenced with a combination of a low open fence as shown in Exhibit "B" and our standard 3' split rail fence as shown in Exhibit "C." Fencing will be provided as shown in Exhibit "D" (fencing diagram).

Exhibit "A" to the plan in turn contains a diagram of a fence, in plan view, comprised of cedar boards, 5 feet in height, with 1/2 inch spacing between the vertical boards.

The Annamreddys' fence, consisting of 5-foot vertical cedar boards spaced a 1/2 inch on alternating sides of horizontal boards, was in poor condition and needed to be replaced. In January 2020, Suresh Annamreddy attended an Association board meeting and received verbal approval to replace the fence. In late January or early February 2020, a windstorm damaged a portion of the fencing

3

No. 83025-2-I/4

bordering the Annamreddy and Mullor properties, and Suresh Annamreddy removed the damaged fencing. He arranged to replace the remaining dilapidated fencing with a "solid cedar style wood fence" similar in design to existing fencing in various areas of Renaissance Ridge and lacking the 1/2 inch space between the vertical boards.

Before the Annamreddys had completed the fence replacement project, Mullor submitted a written complaint to the Association asking the board to order the Annamreddys to remove any new fencing and to replace it with an alternating cedar slat fence. Mullor argued that under article XII, section 4 of the CC&Rs, the only permissible fence style is that described in Exhibit "A" to the Wildlife Network Management Plan.

On August 13, 2020, two board members and the Association attorney visited the Mullors' property to inspect the Annamreddys' new solid cedar fence, the remaining pre-existing "alternating slat style" fencing, and the gap along the property line where a portion of the old fencing had blown over during the windstorm. On August 31, 2020, the Committee issued a written approval of the Annamreddys' fence. It stated that

- The remaining portion of the original fence and the portion of the fence that was removed after it fell must be replaced for safety and aesthetic purposes. The fence is dilapidated and sits on top of a retaining wall, creating safety concerns.
- The Association will not require you to remove the new fencing you installed. That fencing is approved, so long as you stain the fencing in the required cappuccino color. Please complete this staining within 30 days.
- The Association approves your request to replace the remaining original fencing and missing fencing with fencing of the same style and height as that fencing already replaced, so long as that new fencing is stained the required cappuccino color. Please

4

No. 83025-2-I/5

> complete this replacement within 30 days to ensure that the dilapidated and missing fencing is promptly addressed.

The Annamreddys complied with this letter, installing solid cedar style fencing in the gap atop the retaining wall bordering the Mullors' lot.

By letter of the same date, the Association's attorney notified the Mullors that it was rejecting their complaint. The Association determined that the CC&Rs did not mandate fencing of a design and height described in the Wildlife Management Plan unless the fencing ran along wetlands and wildlife networks. It further concluded that the solid cedar fencing that the Annamreddys had erected was the same as the type erected by many homeowners within the community. The Committee found the style to be "more modern" and "more attractive" than the original fencing, and found that the new fence did not unreasonably block sunlight in a manner that could be characterized as a nuisance or a violation of the CC&Rs.

In September 2020, the Mullors filed a lawsuit against the Association and the Annamreddys, alleging breach of duty of reasonable and ordinary care and breach of the CC&Rs. They subsequently amended their complaint to add a claim for nuisance against the Annamreddys. They sought damages and a permanent injunction requiring the Annamreddys to remove the solid cedar fencing and replace it with a fence the "same design and dimensions as the previously existing fence on the property."

The trial court granted summary judgment in favor of the Annamreddys and the Association, dismissing the Mullors' claims. The Mullors appeal.

5

No. 83025-2-I/6

ANALYSIS

The Mullors assign error to the summary judgment dismissal of their claims for breach of the CC&Rs and nuisance. They contend the trial court erred in holding that the CC&Rs allow the Annamreddys to install a solid cedar fence. They argue the Committee lacked the authority to approve any fencing retroactively or to grant a variance that is inconsistent with the Wildlife Network Management Plan. They also argue the trial court erred in concluding that the fence is not a nuisance as a matter of law. We reject these arguments.

Standard of Review

We review a trial court's order on a motion for summary judgment de novo. *Bangerter v. Hat Island Cmty. Ass'n*, 199 Wn.2d 183, 188, 504 P.3d 813 (2022). Interpretation of covenants is a question of law based on the rules of contract interpretation. *Id*. at 189. (citing *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014)); *Kiona Park Ests. v. Dehls*, 18 Wn. App. 2d 328, 334-35, 491 P.3d 247 (2021). The court's primary objective is to determine the intent of the original parties that established the covenants. *Id.* (citing *Riss v. Angel*, 131 Wn.2d 612, 621, 934 P.2d 669 (1997)). "In determining intent, language is given its ordinary and common meaning." *Riss*, 131 Wn.2d at 621. We may resolve any ambiguity as to the parties' intent by considering evidence of the surrounding circumstances. *Id.* at 623. The court will place special emphasis on protecting the homeowners' collective interests. *Id.* at 623-24. A covenant is ambiguous when its meaning is uncertain or two or more reasonable and fair interpretations are possible. *White v. Wilhelm,* 34 Wn. App. 763, 771, 665 P.2d 407 (1983). While intent is a factual question, when the available evidence

6

No. 83025-2-I/7

warrants but one conclusion, assessing intent may be determined by this court as a matter of law. *Wilkinson*, 180 Wn.2d at 250.

### Permissible Fences under Article XII, Section 4

The Mullors first maintain that article XII, section 4 unambiguously requires all homeowners to install only the types of fencing depicted in the Wildlife Network Management Plan, regardless of whether the parcel is adjacent to a wetland or the wildlife network. They focus on the language that provides that "[a]ll fencing must be of the style shown on the attached Exhibit "C," and location approved by the Architectural Control Committee."

On the record before this court, we conclude the language of article XII, section 4 is ambiguous. First, the Wildlife Network Management Plan, by its terms, places no restrictions on parcels other than those with "[f]encing along wetlands and wildlife networks." It is undisputed that the Annamreddy fencing is not along any wetland and their parcel is not adjacent to the wildlife network. Jason Kaufman, the current Association president, testified that neither the Mullor nor Annamreddy parcel is located within the tracts defined as "sensitive areas" in the CC&Rs and that neither is adjacent to any wetlands or wildlife networks. The Mullors submitted no evidence to dispute this testimony. The language reasonably supports the Association's understanding that the fencing style restrictions in the Wildlife Network Management Plan apply only to a limited number of parcels and not to the Annamreddy lot.

Second, the sentence preceding the one on which the Mullors rely provides that "[a]ll fences, open and solid, are to meet the standards set by the Committee

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and must be approved by the Committee prior to construction." This provision also arguably supports the Association's interpretation that "solid" fences—i.e., fences lacking the 1/2 inch gap between slats, are generally permissible if approved by the Committee.

But the Mullors argue the word "solid" as used in article XII, section 4 must be interpreted in light of the way this word is used in the Wildlife Network Management Plan which labels the cedar fence depicted in the Plan's Exhibit "A" as "solid," even though the depiction shows a 1/2-inch gap between the vertical fence slats. The Wildlife Network Management Plan does state that "[b]ack yards of all lots adjacent to the wildlife network will be fenced with a <u>solid type</u> 5' – 6' fence per Exhibit 'A.' " (Emphasis added.) This language supports the Mullors' interpretation of the fencing restrictions.

So too does the testimony of Eric Wells, the agent for the developer and declarant involved in the drafting of the CC&Rs. Wells testified that even though the drawings of fencing originally related only to the wildlife network areas, it was his intent that all fencing in the development should be one of the three styles shown in the Wildlife Network Management Plan. The Wells testimony would support an interpretation that the reference to "solid" fencing in article XII, section 4 is merely a reference to the "solid" style of fencing depicted in the Wildlife Network Management Plan, and not a grant of broader authority for homeowners to erect any style of solid fence they choose.

As the Association and the Annamreddys point out, the credibility of Wells' testimony is undercut by what Renaissance Ridge homeowners have actually

8

No. 83025-2-I/9

done over the years. Kaufman testified that, when he surveyed the community, he counted at least 52 of the 300 lots, or nearly one in six, with fences of solid cedar planks. Kaufman's own property has two fences with two alternative slat style fences and two fences with the same solid cedar slats as the Annamreddys erected. The Association's treasurer, Yogesh Gupta, testified that he has lived in Renaissance Ridge since the development opened and when he moved into his new home, there were a number of lots with solid cedar style fences as part of the original construction. He stated "[t]hat style of fencing is and has always been commonly used in Renaissance Ridge." This testimony supports the Association's contention that the original intent in adopting fencing restrictions is not as Wells claims it to be.

Because the record supports two reasonable interpretations of article XII, section 4, we conclude the language is ambiguous and an issue of fact exists as to whether the fence limitations described in the Wildlife Network Management Plan apply to lots outside the wildlife network.

<u>Variances under Article XV, Section 14</u>

But even if a trier of fact adopted the Mullors' interpretation of article XII, section 4, we nevertheless conclude that the Committee has the authority to grant a variance, even retroactively, to the Annamreddys under article XV, section 14 of the CC&Rs. This section provides:

> <u>The Committee . . . shall have the sole and exclusive authority to approve plans and specifications which do not conform to these restrictions in order to</u> (1) overcome practical difficulties, or (2) <u>prevent undue hardship from being imposed on an owner as a result of applying these restrictions</u>, or (3) <u>allow alternative construction upon specific request by an owner</u>. However, such variations will

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83025-2-I/10

only be approved in the event that the variation, in the sole and exclusive discretion of the Committee . . . will not (1) detrimentally impact the overall appearance of the development, (2) impair the attractive development of the subdivision, or (3) adversely affect the character of nearby lots to a significant degree. Granting such a variation shall not constitute a waiver of the restrictions or requirements articulated in this Declaration.

For purposes of approval of architectural design requirements, structure placement, analysis of view restrictions and all other aspects of review authority granted to the Committee and the Declarant through this Declaration, <u>the decision of the Committee and the Declarant shall be final</u>.

(Emphasis added.)  This language bestows sole and exclusive authority on the Committee to consider and grant variances from any restriction, and the Committee's decision is final.  The Washington Supreme Court recently emphasized that homeowner association decision-makers are due significant deference in these situations: "[W]hen a homeowners' association makes a discretionary decision in a procedurally valid way, courts will not substitute their judgment for that of the association absent a showing of 'fraud, dishonesty, or incompetence (i.e., *failure to exercise proper care, skill, and diligence*)[.]'" *Bangerter*, 199 Wn.2d at 190 (quoting *Riss v. Angel*, 131 Wn.2d at 632 (quoting *In re Spokane Concrete Prods., Inc.*, 126 Wn.2d 269, 279, 892 P.2d 98 (1995))) (alteration in original).

The Mullors argue that the Committee did not render its variance decision in a procedurally valid way because the Annamreddys failed to submit formal plans before they erected the fence.  But article XV, section 14 does not prohibit the granting of an after-the-fact variance.  The language of the variance provision appears to contemplate just such an event by allowing the Committee to grant a

10

No. 83025-2-I/11

variance to "prevent undue hardship from being imposed on an owner as a result of applying these restrictions[.]"

The Mullors also maintain that the Committee's chief concern in granting the variance was not whether the Annamreddy fence met the criteria for a variance. There is no evidence to support this contention. It is undisputed that the Committee visited the property and determined that the replacement fence was more attractive than the original fencing, well-harmonized with the surrounding environment, matched many other solid cedar style fences in the community, did not significantly block light to the Mullors' property, and likely improved the value of neighboring properties.

The Mullors next contend that the Annamreddys' failure to submit plans in advance of building the fence was a procedural violation that can only be remedied by removal of the structure. While article XII, section 4 does require Committee approval of plans "prior to construction," article IX, section 4 of the CC&Rs grants the Association flexibility in its enforcement choices.

> In the event that an owner shall fail to comply with any section or provision of the Declaration, and any Amendments thereto, the Board <u>may</u> undertake to enforce compliance through the provisions of Section 3 herein, as well as Article XVI, Section 4 of the Declaration, or any other authority granted to the Board through this Declaration.

(Emphasis added.) In other words, the Association has the discretion to choose whether certain situations warrant moving forward with enforcement action. If the Committee did not deem the Annamreddys' failure to submit formal plans an egregious violation sufficient to warrant requiring them to remove the fence, we defer to that decision.

11

No. 83025-2-I/12

Because the Association has the authority to grant a variance to the Annamreddys to permit them to build a solid cedar fence along the border of their property, the Mullors failed to establish that either the Association or the Annamreddys violated the CC&Rs. Summary judgment was appropriate.[1]

## Nuisance

The Mullors next argue that genuine issues of material fact remain regarding whether the Annamreddy's fence created a nuisance. We disagree.

The Mullors alleged a violation of RCW 7.48.120, which provides:

> Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

The Mullors' nuisance claim was premised on the allegation that the fence was unapproved and violated the CC&Rs. But the fence was not unapproved, and it did not breach the CC&Rs because the Committee granted a variance. Mullor has not identified any other law that has been violated or any other common law duty

---

[1] The Association also argues that any Wildlife Network Management Plan fencing restrictions applicable to lots other than those adjacent to the wildlife network have been abandoned. Abandonment is an equitable defense available to preclude enforcement of a covenant. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341-42, 883 P.2d 1383 (1994). The defense requires evidence that prior violations by other residents have so eroded the general plan as to make enforcement useless or inequitable. *Id.* at 342. Generally, whether evidence supports a finding of abandonment is a question of fact. *Green v. Normandy Park Riviera Section Cmty. Club*, 137 Wn. App. 665, 697, 151 P.3d 1038 (2007). *See also White v. Wilhelm*, 34 Wn. App. at 770 ("Applicability of [the abandonment] doctrine, which is based on estoppel, is a factual determination.") We do not need to reach the issue of whether the Association members have abandoned the fencing restrictions for lots such as the Annamreddys' parcel because summary judgment was appropriate under article XV, section 4's variance provision.

12

No. 83025-2-I/13

breached. There is no common law duty independent of those listed in the nuisance statute or required by the CC&Rs. "At common law a man has a right to build a fence or other structure on his own land as high as he pleases, although he thereby completely obstructs his neighbors' light and air, and the motive by which he is actuated is immaterial." *Karasek v. Peier*, 22 Wash. 419, 427, 61 P. 33 (1900). *See also Asche v. Bloomquist*, 132 Wn. App. 784, 133 P.3d 475 (2006) (a nuisance action fails when it is based on rights conferred by a statute and the statutory rights have not been violated). Mullor failed to establish the existence of a nuisance as a matter of law. Summary judgment dismissal of this claim was also proper.

<u>Attorney Fees Awarded by the Trial Court</u>

The Mullors ask us to reverse the trial court's award of attorney fees to the Association and the Annamreddys because summary judgment was improper and the trial court failed to enter written findings of fact as to the reasonableness of those fees. We reject the first argument and need not address it. We further conclude the Mullors waived their right to challenge the fee award to the Association. But we agree the fee award to the Annamreddys must be remanded to the trial court for entry of findings of fact justifying the reasonableness of the amount awarded.

First, the Mullors did not assign error to, or challenge the reasonableness of, the attorney fee award to the Association in their briefs to this court. If an appellant fails to raise an issue in the assignments of error and fails to present any

13

No. 83025-2-I/14

argument on the issue in their brief, we generally will not consider the merits of that issue. *State v. Olson,* 126 Wn.2d 315, 321, 893 P.2d 629 (1995).

Second, in response to the Association's motion for attorney fees, the Mullors "acknowledge[d] that an award of costs and attorneys' fees to the prevailing party is appropriate in this case and that the costs and fees claimed by defendant Renaissance Ridge Homeowners' Association are not unreasonable." The Mullors did not object to the fee award, did not challenge the amount awarded, and did not call any errors in computing the award to the trial court's attention. Under RAP 2.5(a), this court generally declines to review any claim of error not raised before the trial court. The Mullors do not argue that any exceptions to this rule apply. They have thus failed to preserve this claim of error.

Third, we conclude that the Mullors adequately preserved objections to the amount of attorney fees awarded to the Annamreddys. The Annamreddys requested an award of $19,156.91. The Mullors asked the court to reduce any award by $1,079.50, an amount they deemed to reflect paralegals performing clerical and administrative, rather than legal, tasks. The court awarded the full amount the Annamreddys requested without making any findings as to the reasonableness of the challenged paralegal services. Although the Mullors did not separately assign error to the Annamreddy attorney fee award, it adequately briefed the issue in its opening and reply briefs. While this type of flaw generally precludes review, we nevertheless have the discretion under RAP 1.2(a) to reach the issue because the record and briefing are adequate to do so.

14

No. 83025-2-I/15

The Mullors contend the trial court abused its discretion in failing to enter written findings of fact to support the Annamreddy fee award. We agree. Trial courts must articulate the grounds for a fee award, making a record sufficient to permit meaningful review. *White v. Clark County*, 188 Wn. App. 622, 639, 354 P.3d 38 (2015). This generally means the court must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question. *Id.* (quoting *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014)). Our Supreme Court requires that the trial court create a specific record when awarding attorneys' fees and costs. "Not only do we reaffirm the rule regarding an adequate record on review to support a fee award, we hold findings of fact and conclusions of law are required to establish such a record." *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). If the trial court does not make findings of fact and conclusions of law supporting the attorney fee award, the appropriate remedy is to remand to the trial court for entry of proper findings and conclusions. *White*, 188 Wn. App. at 639.

The trial court did not enter findings of fact or conclusions of law in support of its Annamreddy fee award, despite the fact that the Mullors raised objections to certain charges. We thus remand for entry of findings of fact and conclusions of law relating to the trial court's award of attorney fees to the Annamreddys.

Attorney Fees and Costs on Appeal

The Annamreddys and the Association request an award of attorney fees and costs for this appeal under article XV, section 15 of the CC&Rs. This provision states that "[i]n any judicial action to enforce a determination of the Committee, the

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83025-2-I/16

losing party shall pay the prevailing party's attorneys' fees, expert witness fees, and other costs incurred in connection with such a legal action or appeal." The Annamreddys and the Association have substantially prevailed here, and we award them reasonable attorney fees and costs, subject to their compliance with RAP 18.1.

Affirmed but remanded for the entry of findings of fact and conclusions of law to support the attorney fee award to the Annamreddys.

_Andrus, C.J._

WE CONCUR:

_Coburn, J._          _Smith, A.C.J._

16